LIBERTY BONDING COMPANY
*v.* STATE of Arkansas

80-121                                      604 S.W. 2d 956
Supreme Court of Arkansas
Opinion delivered September 29, 1980

436

*Douglas W. Parker*, for appellant.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

John A. Fogleman, Chief Justice. This appeal involves the forfeiture of two bonds executed by appellant, Liberty Bonding Company, which is owned by Allen Felkins. Appellant posted an appeal bond in the penal sum of $20,000 on February 8, 1979, for the appearance of Larry Cureton in case No. CR-75-110 in the Circuit Court of Sebastian County. Subsequently, appellant posted an appearance bond in the penal sum of $15,000 for Cureton's appearance in case No. CR-79-283 in the Sebastian Circuit Court. When Cureton failed to surrender himself in execution of a sentence in each of the cases, judgment was rendered against appellant on both bonds. The judgment was for $15,000 on each of them. The judgments were rendered separately, but the cases were consolidated for the purpose of this appeal. Appellant asserts three points for reversal, viz:

I

THE TRIAL COURT HAD NO AUTHORITY TO CONTINUE THE BOND IN FORCE IN CR-79-283 BEYOND THE TIME OF SENTENCING WITHOUT THE CONSENT OF THE SURETIES AND THEREFORE WAS WITHOUT AUTHORITY TO FORFEIT THE BOND.

## II

THE TRIAL COURT ERRED IN FORFEITING THE BOND IN CR-75-110 AFTER HAVING DEFENDANT LARRY CURETON IN CUSTODY IN CR-79-283 WHEN THE COURT ITSELF HAD RELEASED THE DEFENDANT FOR A PERIOD OF THREE WEEKS SUBSEQUENT TO SENTENCING THE DEFENDANT TO THE PENITENTIARY.

## III

THE TRIAL COURT ABUSED ITS DISCRETION IN ENTERING JUDGMENT UPON THE BOND FORFEITURES IN AN EXCESSIVE AMOUNT.

We reverse the judgment in Sebastian Circuit Court No. CR-79-283, but affirm the judgment in Sebastian Circuit Court No. CR 75-110.

## I

Pursuant to a plea bargain, Cureton appeared with his attorney, Robert S. Blatt, for the purpose of entering a plea of guilty in CR-79-283 on charges of breaking or entering and of theft of property. The court sentenced Cureton to nine years imprisonment, with three years suspended, on each count of the charge, to run concurrently with each other and with Cureton's sentence in CR-75-110, which was then pending in the Court of Appeals. The state's petition against appellant asked that appellant be required to show cause why judgment should not be entered against it on the bond for the failure of Cureton to appear on September 24, 1979, as ordered by the circuit court.

When Cureton appeared for sentencing on August 24, 1979, the trial judge examined the plea sentence Cureton had signed, noted a statement therein that Cureton was to remain on bond until September 14, 1979, when he was to surrender, and asked, "has the bondsman agreed to that?"

Cureton's attorney responded, "Yes, sir, as far as we know he will do that." The judge responded that if the bondsman did not agree, this could not be done. After sentencing Cureton, the judge stated that he could remain on bond, if it was all right with the bondsman, until September 14, 1979, at 2:00 p.m.

There is no evidence that appellant ever agreed to this arrangement or that it had ever authorized Blatt to speak for it. Blatt testified that no one from the bonding company was present when Cureton appeared for sentencing. Blatt said that the answer he gave to the court's inquiry was based upon what Cureton had told him. He stated that the hearing on August 24 had been set on a petition to revoke probation of Cureton's wife (who was his codefendant) on another charge and that notice had gone to Sentinel Bonding Company, as her bail. He said that no proceedings relating to Cureton had been scheduled for that date, so there had been no reason for him to notify appellant, or for appellant to have known, of Cureton's appearance on that date. Blatt admitted that he had written the sentence about Cureton's release until September 14, in order to make sure that Cureton was not taken into custody, but that he did not "check out" Cureton's statement to him that the bonding company had agreed.

Allen Felkins testified that he was not present at the hearing on August 24, and had no notice of it. He stated that he never had any intention of remaining on Cureton's bond in CR-79-283 subsequent to the entry of judgment against Cureton, and that he had never told either Cureton or Blatt that he would do so. He said that he would not remain on a bond for anyone who had been sentenced to the penitentiary, not even his own brother, much less Cureton, that he had never remained on any bond after a defendant had been sentenced to the penitentiary, and that he was normally released from a bond when a defendant was either released by him or was sentenced.

A deputy circuit clerk testified that neither appellant nor any representative of appellant was present in the courtroom on August 24, 1979. John Stauffer, Court Administrator for Sebastian County, testified that it was his practice to check

with a bail bondsman to verify the bondsman's willingness to remain on a defendant's bond in cases calling for surrender on a date subsequent to sentencing. He did not do so in this case, because he had not been present when Cureton was sentenced and only learned of the sentencing by later examining the docket sheet. He did not talk with appellant until Monday, August 27, when Felkins asked him what, if anything, had happened on Larry Cureton.

Stauffer testified that, on August 20, he had sent a notice to Sentinel Bonding Company and was advised by that company that Liberty was the surety on the bond. Stauffer said that he felt certain that he had then notified appellant.

The bond in question was executed in the Municipal Court of Fort Smith. It was an undertaking that Cureton would appear before the court "at the time indicated" and further guaranteed "all subsequent appearances before any Court having jurisdiction, including appearances relating to appeals and on remand, until the Defendant is lawfully discharged, or upon rendition of final judgment has surrendered himself in execution thereof."

We agree with appellant that the controlling authority in this case is *Suit* v. *State*, 212 Ark. 584, 207 S.W. 2d 315. The bond in that case provided that Suit "would appear in circuit court. . . . to answer said charges and would render himself amenable to the orders and process of said court and if convicted render himself in execution thereof." Suit appeared, pleaded guilty, and was sentenced, but the court suspended the execution of the sentence to allow Suit to comply with the order of a chancery court and ordered that he remain on the "present bond." When Suit did not surrender or appear, the court rendered judgment against the sureties. We held that the pronouncement of a sentence on a defendant takes him out of the custody of the bail and puts him in the custody of the proper officers of the law, even though the court has specifically directed that the defendant remain on his present bond.

The sentence was definitely pronounced on Cureton, but the state contends that the statute in effect at the time *Suit*

was decided no longer governs. That is true, but we see no difference in this situation. The statute then in force, Ark. Stat. Ann. § 43-707 (Repl. 1977) required that the bail guarantee that the defendant at all times render himself amenable to the orders and process of the court in prosecution of the charge, and, if convicted, render himself in execution thereof. Rule 9.2 (e). Ark. R. Crim. P. vol. 4A Ark. Stat. Ann. (Repl. 1977) provides that an appearance bond shall guarantee all subsequent appearances of a defendant on the same charges or on other charges arising out of the same conduct before any court, including appearances relating to appeals and upon remand. Neither the language of the bond nor of the procedural rule is significantly different from the bond and statute involved in *Suit* in respect to the responsibility of the bail, after pronouncement of sentence, as clearly recognized by the trial judge at the time of sentencing. The possibility of appeal has no bearing on this case, because there is no appeal from a guilty plea. Rule 36.1, Ark. R. Crim. P. vol. 4A Ark. Stat. Ann. The judgment rendered on this bond was erroneous.

## II

We do not agree with appellant that it was relieved of its obligation on the appeal because the state had custody of Cureton after he was sentenced in CR-79-283. The appeal bond was a distinct and separate obligation. No action was taken by the state when Cureton was sentenced that prevented Cureton from surrendering himself, as required by the appeal bond, in execution of the judgment. While Cureton did not remain subject to the control of his bail, insofar as case No. CR-79-283 is concerned, after having been sentenced on his plea of guilty, he remained in the custody of his bail on the appeal bond for the purposes of the judgment from which the appeal was taken. The state did not, and has not, put Cureton beyond the control and custody of the bail. When there is no act of God, the state or a public enemy, or actual duress to prevent appearance by an accused on bail at the time fixed by the terms of the bond, the security is not released from forfeiture. *Tri-State Bonding Co.* v. *State*, 263 Ark. 620, 567 S.W. 2d 937. The state did nothing to prevent Cureton from appearing pursuant to the appeal bond.

This situation bears some similarity to that in *Dunlap* v. *State*, 66 Ark. 105, 49 S.W. 349. There, one who was in custody on two charges escaped before the time for his appearance pursuant to bail granted on three other charges. We held that the fact that the defendant was in custody at the time of his escape did not discharge his bail from liability on the bond, because the defendant was not in custody at the time his bail was bound for his appearance and the fact that he had been in custody was no obstacle to his subsequent appearance in discharge of the obligation of his bail. What we said in *Dunlap* is peculiarly appropriate here, i.e.:

> The consideration of the bond of the bail was the discharge of Aycock from custody for the offense for which he had given bail to answer. It does not appear that he was ever held in custody for the same offense after the bond of his bail had been accepted and approved by the sheriff. He stood discharged from custody for said offense at the time of his escape, but he was under arrest for another and distinct offense. His bail executed the bond for his appearance with the understanding implied by law that he could be arrested for any other offense. There was no failure of the consideration of the bond, or the condition upon which the bail executed it. \*\*\*

If Cureton had been held in custody and then escaped before the time for his surrender on the appeal bond, appellant would have been liable on the bond. It is at least as appropriate that appellant be liable under the circumstances prevailing here.

### III

Appellant pleads for a reduction of the amount of the bond forfeiture. It states that the expenses incurred by the state in attempting to apprehend Cureton have amounted to the issuance of two bench warrants and the entry of Cureton's name into the NCIC computer. Yet Cureton is not in custody and there is no way of estimating the ultimate expense to the state of taking him into custody. Appellant has been unsuccessful in its efforts to surrender Cureton. If it had

been successful, undoubtedly the trial court would have given it greater consideration. Appellant claims that it has spent $12,615 in attempting to apprehend Cureton. Some of that amount is not well documented. The trial judge allowed a remission of $5,000. We cannot say that there was any abuse of the trial court's discretion in this regard.

The judgment on the bond in CR-75-110 is affirmed but the judgment on the bond in CR-79-283 is reversed.