IN the MATTER of Charles BRANDENBURG

CA 03-226 126 S.W.3d 732

Court of Appeals of Arkansas
Division IV
Opinion delivered October 29, 2003

*Richard Neil Rosen*, for appellant.

*Sherry D. Burnett*, for appellee.

LARRY D. VAUGHT, Judge. The Arkansas Department of Human Services (DHS) appeals from an order of the Garland County Circuit Court that reversed DHS's determination of the number of hours of private-duty nursing care that was medically necessary for the care of Charles Brandenburg. We find that DHS's administrative action was supported by substantial evidence of record;

was not arbitrary, capricious, or characterized by an abuse of discretion; and did not violate constitutional or statutory provisions. Accordingly, we reverse the decision of the Garland County Circuit Court and order the reinstatement of DHS's determination.

Appellee Charles Brandenberg, born March 4, 1991, is a Medicaid recipient with multiple congenital abnormalities including, but not limited to: atrial septic defect, hydrocephalus, cerebral palsy and related seizures, unextended testicles, bronchial pulmonary dysplasia, scoliosis. He is unable to swallow, requires the suctioning of secretions, and receives oxygen supplementation and hyperalimentation (being fed through a "j-button"). Appellee lives with his grandmother, Ruth Anderson, who is also his guardian and primary caregiver.

Prior to 2001, appellee had been receiving private-duty nursing care twenty-four hours per day, seven days a week. At some point, DHS decreased those hours to sixteen hours per day, seven days a week. Subsequently, based upon a prescription from appellee's doctor and a review of the medical records submitted by CareNetwork, the provider, DHS gradually decreased the number of private-duty nursing care hours that appellee received to sixteen hours per day, seven days a week for one month; sixteen hours per day for five days a week, and twelve hours per day for two days a week for two months; then twelve hours per day for seven days a week for three months.[1] The provider alleges that the appropriate forms, constituting a prescription, were signed by appellant's doctor on October 10, 2001. However, that form never was received by the appropriate individuals, and the last prescription received by DHS's Division of Medical Services was dated October 18, 2001. DHS's approval was faxed back to the provider on October 29, 2001, within the allotted thirty-day notification period. The provider subsequently requested reconsideration and submitted a new order from appellee's doctor dated November 1, 2001, without explanation or documentation. The request for reconsideration was denied for lack of adequate justification of medical necessity. DHS's administrative decision was appealed to the Circuit Court of Garland County. The trial court's January 2, 2002 order reversed DHS's administrative action and reinstated

---

[1] The initial request stated two months, but was viewed as an error because the certification period covers six, rather than five, months. The resulting approval was adjusted to be consistent with that time frame.

the private-duty nursing care hours of sixteen hours per day, seven days a week. This appeal follows.

*Standard of Review*

 It is not our role to conduct a de novo review of the circuit court proceeding; rather, our review is directed at the decision of the administrative agency. *Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). Our supreme court recently restated the applicable standard of review:

> [W]hen reviewing administrative decisions, we review the entire record to determine whether there is any substantial evidence to support the administrative agency's decision, whether there is arbitrary and capricious action, or whether the action is character-ized by abuse of discretion.

*Arkansas Dep't of Human Servs. v. Schroder*, 353 Ark. 885, 888, 122 S.W.3d 10, 13 (2003). The supreme court has recognized that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Id.*

██ ██ To determine whether a decision is supported by substantial evidence, we review the whole record to ascertain if it is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* To establish an absence of substantial evidence to support the decision, the party challenging the decision must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusions. *Id.* Substantial evidence is valid, legal, and persuasive evidence. *Id.* To set aside an agency decision as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoned, without consideration and with a disregard of the facts and circumstances of the case. *See Partlow v. Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980).

██ ██ It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002). This court reviews the entire record in making this determination. *Id.*; *see also* Ark. Code Ann. § 25-15-212 (Repl. 2002). In reviewing the record, this court gives the evidence its strongest probative force in favor of the agency's ruling. *Van Curen, supra.* Between two fairly conflicting views, even if the reviewing court might have made a different choice, the Board's choice must not be displaced. *Id.*

### DHS's Administrative Decision

The Arkansas Medicaid Program provides private-duty nursing services for high technology, non-ventilator dependent eligible recipients under the age of twenty-one. The program is designed to provide nursing services to the recipient in his or her place of residence by a registered nurse and/or a licensed practical nurse under the direction of the recipient's physician.

It is undisputed that appellee is a proper recipient to receive private-duty nursing services. The only issue in the instant case is how many hours per day those services are medically necessary for his care. All medical assistance provided under Medicaid must be "medically necessary." *See* 42 U.S.C. §§ 1320a-7 (2000), 1320c-5 (2000), 1396a (2000). Under 42 U.S.C. § 1396a(a)(17), the states have broad discretion to adopt standards for determining the extent of medical assistance, requiring only that the standards be reasonable and consistent with the objectives of the Medicaid Act.

DHS maintains that the testimony clearly shows that its decision was based upon medical necessity and was consistent with the provisions of the Medicaid Act. Dr. Judith McGhee testified that as Medical Director for the Arkansas Medicaid Program she reviewed Dr. Jon Robert's order signed on October 18, 2001, and approved the requested services. She further testified that the decision was faxed back to the provider on October 29, 2001. She stated that there was no new diagnosis or change in condition related to appellee. Dr. McGhee clarified the reason that she did not authorize sixteen hours per day, seven days a week, as had been ordered previously, but not requested in the October 18, 2001 order. She explained that at the last hearing DHS had attempted to decrease appellee's nursing care to twelve hours per day, seven days a week, but it was decided that appellee's guardian, Ms.

Anderson, would be given additional time to undergo training regarding increased performance of various services before the nursing hours were reduced. The training was supposed to take place during the increased hours that were sustained for the next month. At that time, the reduction in hours, which corresponded to the October 18 prescription received from Dr. Robert, was reinstituted.

Dr. McGhee testified that some of the services were not medically necessary based upon the representative medical records that the provider forwarded for her review. The flowsheets indicated that appellee was frequently off supplemental oxygen for hours at a time, while his pulse oximeter reading remained at acceptable, stable levels. Dr. McGhee testified that it appeared that appellee only needed the supplemental oxygen for the approximately twelve hours each day that he slept. She also testified that the records show that appellee did not need constant deep suctioning.

Dr. McGhee's testimony was confirmed by appellee's nurse, Shawn Pierce, and his guardian, Ms. Anderson. After initially denying that appellee could be off of supplemental oxygen for more than thirty minutes at a time, Ms. Pierce admitted that the flowsheets showed "substantial periods" where no oxygen was necessary during her shift. Additionally, although her testimony was inconsistent, Ms. Anderson admitted that appellee could go for an entire day without requiring deep suctioning, and that although she was uncomfortable doing it, she could and had been performing the deep suctioning.

The only witness who stated that appellee needed continuous oxygen and constant deep suctioning was his physician, Dr. Robert. He testified that appellee required intense monitoring and was basically an ICU patient being cared for at home. When Dr. Robert was presented with the flowsheets that contradicted his position, he "found them to be inconceivable." He did concede that he was not there when the readings were recorded, and further stated that it would be difficult to agree or disagree with Dr. McGhee's testimony regarding the flowsheets that supported the lack of need for supplemental oxygen. Dr. Robert was unable to render an opinion as to the medical necessity of the supplemental oxygen. He further testified that appellee ideally would have

round-the-clock nursing care, but realized that there are other constraints that need to be recognized and that must be dealt with by the agency.

The hearing officer, after assessing the evidence and credibility of the witnesses, made a finding that the Division of Medical Services acted correctly and in accordance with Medicaid policy when it approved the order signed by Dr. Robert on October 18, 2001, as the current prescription for private-duty nursing care.

■ The question is not whether the testimony would support a contrary finding, but instead, whether it supports the finding that was made. *See H.T. Hackney Co. v. Davis,* 353 Ark. 797, 120 S.W.3d 79 (2003). DHS asserts that under this analysis, its decision is supported by substantial evidence as required, and that fair-minded persons could reach the same conclusions based upon the record. The hearing officer found that appellee alleged that the Home Health Certification and Plan dated October 10, 2001, was submitted for review. Dr. McGhee testified that her office never received an order dated October 10, 2001, and the hearing officer specifically found her testimony credible.

■ The hearing officer also found that the Home Health Certification and Plan, bearing Dr. Robert's signature, and dated October 18, 2001,[2] was a valid prescription for private-duty nursing services for sixteen hours per day, seven days a week for one month; sixteen hours per day for five days a week, and twelve hours per day for two days a week for two months; then twelve hours per day for seven days a week for three months. Additionally, he found that Ms. Anderson signed a parent agreement that states, in part, that she would assume an increased level of responsibility for appellee's care so that in-home nursing care hours would be reduced. This finding was consistent with Dr. McGhee's testimony concerning the reduction in hours even though there was no change in appellee's condition. The testimony of Dr. McGhee and Ms. Pierce regarding the oxygen levels on the flowsheets, as well as the testimony of Ms. Anderson and Ms. Pierce about appellee's ability to go long periods without requiring suctioning, constitute substantial evidence to support the decision

---

[2] Certain pages associated with the Home Health Certification and Plan were signed on October 22, 2001.

of DHS. Although round-the-clock care for appellee may have been desirable, we hold that there is substantial evidence to support DHS's decision that it was not medically necessary.

Finally, DHS maintains that its decision was not arbitrary, capricious, or characterized by an abuse of discretion. An agency's action is considered arbitrary and capricious when it is not supported on any rational basis. *See Arkansas Bd. of Registration for Prof'l Geologists v. Ackley*, 64 Ark. App. 325, 984 S.W.2d 67 (1998). To set aside an administrative action as arbitrary and capricious, the record must show that the agency action was "willful and unreasoning," without consideration and with a disregard to the facts. *Id*. DHS asserts that such is not the case here, and that instead, its decision was based upon testimony and evidence.

Dr. McGhee approved the Home Health Certification and Plan bearing Dr. Robert's signature dated October 18, 2001. Although there was testimony that another order signed on October 10, 2001, had previously been submitted, the October 18, 2001 order was followed because it was the latest one received. After the decision to approve the order was made by Dr. McGhee and faxed back to the provider on October 29, 2001, the provider requested reconsideration and submitted a new order for private-duty nursing care seeking additional hours signed by Dr. Robert on November 1, 2001. The reconsideration was submitted without any explanation or documentation and was denied. Where we have determined that the administrative decision is supported by substantial evidence, it automatically follows that the decision cannot be classified as unreasonable or arbitrary. *See Holloway v. State Bd. of Architects*, 352 Ark. 427, 101 S.W.3d 805 (2003).

Appellee asserts that DHS's action in making a graduated decrease in services and giving only two days' notice, together with the very brief duration of the certification period, violates appellee's right to due process as guaranteed by the United States and Arkansas Constitutions. U.S. Const. amend. 14, § 1, Due Process Clause; Ark. Const. art. 2, § 21. DHS, however, contends that there was no constitutional or statutory violation. Appellee does not cite authority to support his claim of a due process violation, but simply asserts a general complaint that the reduction in services gave appellee only two days' notice and somehow violated his due process rights. That claim is not supported by the evidence.

Although appellee maintains that a prescription was signed by Dr. Robert on October 10, 2001, and was forwarded to DHS, the hearing officer found credible the testimony of Dr. McGhee that the October 10 order was never received by anyone in her office. The latest prescription they did receive was the one signed and dated October 18, 2001, which was approved by Dr. McGhee and faxed back to the provider just a few days later on October 29, 2001.

The provider later requested a reconsideration of the approved prescription. That request for reconsideration, signed by Dr. Robert on November 1, 2001, was submitted without documentation or explanation. The request for reconsideration was faxed to DHS on November 27, 2001, as a fax cover letter from the provider dated November 27, 2001, and had a fax machine imprinted date and time of November 27, 2001, at 3:10 p.m. That information matches the fax machine imprinted date and time of November 27, 2001, at 3:10 p.m., which appeared on the request for reconsideration received by Dr. McGhee's office. The request for reconsideration was denied the very next day, on November 28, 2001. DHS argues that appellee's claims that DHS's response was somehow untimely and/or violated due process is without merit. The October 18, 2001 prescription was approved within a few days of its submission and the request for reconsideration was denied the day after it was submitted, both within the allowable time frames.

The October 18, 2001 prescription was the last, complete "order" received from which DHS had to base its decision. Had the provider submitted a timely request for reconsideration with adequate documentation and explanation, the outcome might have been different. Based on the information with which DHS was provided, we find that there was substantial evidence to support the administrative agency's decision, and that it was not an arbitrary and capricious action, or characterized by abuse of discretion. Accordingly, we reverse the Garland County Circuit Court order and order the reinstatement of DHS's order.

Reversed.

CRABTREE and BAKER, JJ., agree.