Peggy TAYLOR, Administratrix of the Estate of Gladys Hamilton, Deceased *v*. Jimmy Don HAMILTON and The Estate of Samuel Hamilton, Deceased

CA 04-886                                                           205 S.W.3d 149

Court of Appeals of Arkansas
Opinion delivered March 9, 2005

[Rehearing denied April 13, 2005.]

*Bridges, Young, Matthews & Drake, PLC*, by: *John P. Talbot* and *James C. Moser, Jr.*, for appellant.

*John Harris Jones*, for appellee.

TERRY CRABTREE, Judge. Peggy Taylor, administratrix of the estate of Gladys Hamilton, brings this appeal from two orders of the Jefferson County Circuit Court's probate division. On May 3, 2004, the court found that appellee Jimmy Don Hamilton was the son of Samuel D. Hamilton, who died on October 20, 2001, and that Jimmy was entitled, as a pretermitted heir, to an intestate share of

Samuel's estate. Samuel was survived by his widow, Gladys Hamilton, whom he married in 1953 and with whom he had no children. Gladys died on December 2, 2002. Appellant also appeals from a June 21, 2004 order in which the court overruled Gladys's objection to Jimmy's claim and determined that Gladys and Jimmy were the only heirs and distributees of Samuel's estate. In that order, the court stated that Samuel's will had been probated and that Jimmy was a pretermitted heir entitled to an intestate share of Samuel's estate, subject to Gladys's widow's allowances and dower during her lifetime. We find no error and affirm.

Jimmy was born out of wedlock on September 12, 1953, to Velonia Adams, who listed Samuel as Jimmy's father on the birth certificate. Jimmy was Samuel's only child. Velonia and Jimmy moved to Flint, Michigan, when Jimmy was about two years old. A paternity action was never filed against Samuel during his lifetime. However, according to Jimmy, he and Samuel had a relationship and saw each other many times over the years. On November 13, 1998, Samuel signed a will leaving all of his estate to Gladys and nominating her as his executrix. In his will, Samuel stated that he had no children. Although Samuel died on October 20, 2001, Gladys did not inform Jimmy of his father's death until March 2002, when Jimmy called and asked to speak to Samuel.

On March 26, 2002, Jimmy filed a petition against Gladys to establish Samuel's paternity in the Jefferson County Circuit Court. He stated that he was in need of an expedited hearing to determine his paternity before April 20, 2002, to avoid being denied his lawful right to inherit property from his father. In response, Gladys denied Samuel's paternity of Jimmy but did not mention any failure to join Samuel's estate as a necessary party. After a hearing, the court found, on April 18, 2002, that Samuel was Jimmy's father. The court stated that the order was final for the purpose of determining Jimmy's paternity but provided that Gladys could, within forty-five days, request that Jimmy submit to a DNA test and that Samuel's remains could be exhumed. The DNA testing was done and demonstrated that the probability of Samuel's paternity of Jimmy was greater than 99.99%.

On April 8, 2002, Jimmy filed a petition for the appointment of administration of Samuel's estate, stating that he wanted to make a claim against it within the time prescribed by law (180 days after Samuel's death) and requesting a determination of heirship and a declaration that he was Samuel's son. The next day, Jimmy filed an affidavit to claim against the estate on the ground that he was

Samuel's illegitimate son. On July 10, 2002, Jimmy filed an amended petition for the appointment of Ruth Carey as administratrix of Samuel's estate. An order appointing Ms. Carey as administratrix and her letters of administration were filed that day. On July 16, 2002, the administratrix published the statutory notice to creditors.

On August 14, 2002, Gladys filed a petition for the determination of heirs. She alleged that, because Jimmy did not make Samuel's estate a party to the paternity action, the circuit court was not a court of "competent jurisdiction" and, therefore, Jimmy had failed to satisfy the requirement of Ark. Code Ann. § 28-9-209(d) (Repl. 2004) of competent jurisdiction establish the paternity of the child within 180 days of the father's death. In her accompanying brief, Gladys argued that, because the putative father of the child is a necessary party to such litigation, the paternity order did not bind Samuel's estate. In a supplemental brief, she argued that, because the circuit court in the paternity action did not have personal jurisdiction over Samuel's estate, the court lacked subject-matter jurisdiction. In response, Jimmy argued that Gladys, who was a defendant in the paternity action, waived this argument by failing to raise it in that proceeding and that the paternity decision was *res judicata* as to her.

On January 13, 2003, the attorney for the administratrix wrote the circuit judge, stating that it was his and the administratrix's belief that she should not take a side in the dispute. On April 10, 2003, the probate court entered an order dismissing Gladys's petition for the determination of heirs. The court found that, although Samuel's estate was an indispensable party to the paternity action, Gladys, who was a party, failed to assert a defense of failure to join an indispensable party under Ark. R. Civ. P. 19 and, therefore, waived her right to assert that defense in the paternity and probate proceedings. On June 11, 2003, appellant filed a petition to probate Samuel's will, which was admitted to probate on June 24, 2003. Ms. Carey was reappointed administratrix with will annexed on June 26, 2003. On July 3, 2003, Ms. Carey filed a notice of probate of will and appointment of personal representative.

In its May 3, 2004 order, the court found that Jimmy was Samuel's son and that he was pretermitted in Samuel's will and allowed Jimmy's claim to an intestate share of the estate. On June 21, 2004, the court made a determination of heirship, finding that Gladys and Jimmy were the only claimants, heirs, and distributees

of the estate. The court found that Jimmy was a pretermitted heir entitled to an intestate share of the estate, subject only to the widow's allowances and dower during her lifetime. The court found that Jimmy was entitled to the remainder of Samuel's property. This appeal followed.

This appeal is being taken from a probate matter and, therefore, falls under the rule that almost all probate-court orders are appealable. Except for an order removing a fiduciary for failure to give a new bond or render an account, or an order appointing a special administrator, a person aggrieved by an order of the probate court may obtain appellate review of the order. *See* Ark. Code Ann. § 28-1-116(a) and (b) (Repl. 2004). The rules that apply in equity cases apply in appeals from probate orders. Ark. Code Ann. § 28-1-116(g)(1) (Repl. 2004). We review probate proceedings *de novo*, but we will not reverse the decision of the trial court unless it is clearly erroneous. *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000).

In her first point on appeal, appellant asserts that, because Samuel's estate was not a party to the paternity proceeding, the circuit court rendering that decision was not a "court of competent jurisdiction" according to Ark. Code Ann. § 28-9-209(d) (Repl. 2004), which provides in relevant part:

> An illegitimate child or his or her descendants may inherit real or personal property in the same manner as a legitimate child from the child's mother or her blood kindred. The child may inherit real or personal property from his or her father or from his or her father's blood kindred, provided that at least one (1) of the following conditions is satisfied and an action is commenced or claim asserted against the estate of the father in a court of competent jurisdiction within one hundred eighty (180) days of the death of the father:
>
> (1) A court of competent jurisdiction has established the paternity of the child or has determined the legitimacy of the child pursuant to subsection (a), (b), or (c) of this section . . . .

In support of her argument, appellant cites *Hale v. State*, 336 Ark. 345, 985 S.W.2d 303 (1999), in which the supreme court interpreted the phrase "competent jurisdiction" within a federal statute as referring to a court that has both subject-matter jurisdiction and personal jurisdiction. Appellant admits that the circuit

court had subject-matter jurisdiction and personal jurisdiction over *her* in the paternity proceeding. However, she argues, the circuit court lacked personal jurisdiction over Samuel's estate, and therefore, could not enter a conclusive finding of paternity. She points out that a personal representative of Samuel's estate was not appointed until July 10, 2002, and therefore, the estate did not exist until then. *See Jenkins v. Means*, 242 Ark. 111, 411 S.W.2d 885 (1967); Ark. Code Ann. § 28-40-102 (Repl. 2004) (providing that probate proceedings shall be deemed commenced by the filing of a petition, the issuance of letters, and the qualification of a personal representative).

■■ We need not, however, decide whether Samuel's estate was a necessary party to the paternity action because Gladys clearly waived that issue and was bound by that decision. Although subject-matter jurisdiction cannot be waived, the failure to join a necessary party can be waived by the parties who have assented to the court's personal jurisdiction over them, as did Gladys. *Rogers v. Rogers*, 80 Ark. App. 430, 97 S.W.3d 429 (2003); Ark. R. Civ. P. 12(h)(2). Appellant argues that she could not have waived this issue because Samuel's estate was not yet in existence and could not be served with process until after the paternity decision was rendered. We disagree. As an interested party and the executrix named in the will, Gladys clearly could have opened an estate for Samuel; certainly, she could have brought this question to the attention of the court in the paternity proceeding. Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something that is inconsistent with the right or his intention to rely upon it. *Bright v. Gass*, 38 Ark. App. 71, 831 S.W.2d 149 (1992).

Additionally, the doctrine of *res judicata* applies to Gladys's objection to Jimmy's claim. The doctrine of *res judicata* has two aspects: claim preclusion and issue preclusion. *See Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002). The purpose of the *res judicata* doctrine is to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time. *Id.* The test in determining whether *res judicata* applies is whether matters presented in a subsequent suit were necessarily within the issues of the

former suit and might have been litigated therein. *Id.* Under the claim-preclusion aspect of the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. *Id.* When a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* The key question regarding the application of *res judicata* is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Id.*

Issue preclusion is also known as collateral estoppel. *Id.* The doctrine of collateral estoppel bars the relitigation of issues of law or fact actually litigated in the first suit. *Id.* When an issue of law or fact is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *Id.* Collateral estoppel is based upon the policy of limiting litigation to one fair trial on an issue. *Id.* Unlike claim preclusion, collateral estoppel does not require mutuality of parties before the doctrine can be applied, usually defensively. *See Riverdale Dev. Co., LLC v. Ruffin Bldg. Sys., Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004). Collateral estoppel may be asserted by a stranger to the first decree but is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question in the earlier proceeding. *Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd., supra.* For collateral estoppel to apply, the following elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; (4) the determination must have been essential to the judgment. *Id.*

Gladys appeared as a defendant in the paternity action, which was fully litigated, without raising the necessary or indispensable party issue, and did not take an appeal from the court's decision finding that Samuel was Jimmy's father. The circuit court clearly had subject-matter jurisdiction of the paternity action, and without question, it had personal jurisdiction over Gladys. Therefore, we hold that collateral estoppel applies to the paternity court's finding that Samuel was Jimmy's father and claim-

preclusion bars appellant's argument in this proceeding that Samuel's estate should have been a party to the paternity action.

■ Additionally, because Jimmy and Gladys were Samuel's only heirs or beneficiaries, no prejudice to Samuel's estate or any other person has been demonstrated.[1] Gladys was the only beneficiary of Samuel's will and the only person affected by Jimmy's taking of his intestate share as a pretermitted heir.[2] As the court stated in the June 21, 2004 order, no one else filed a claim to Samuel's estate, which has chosen to waive its right to object to Jimmy's claim, and the only person who objected was Gladys. Accordingly, we hold that the judgment rendered in the absence of Samuel's estate was, under the particular facts of this case, valid. Although Samuel's estate accepts the binding nature of the paternity decision, we need not decide whether it binds any party other than Jimmy and Gladys, because Gladys is the only party challenging its validity.

■ In her brief's second point, appellant again points out that the estate was not in existence until the administratrix was appointed and letters of administration were issued on July 10, 2002, almost three months after the running of the 180-day period set forth in Ark. Code Ann. § 28-9-209(d). She argues, therefore, that Jimmy's petition filed with the probate court on April 8, 2002, did not satisfy that statute's requirement that an action be commenced or a claim asserted against the estate within 180 days and that he should be barred from inheriting from Samuel's estate. In *Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1998), the supreme court stated that Ark. Code Ann. § 28-9-209 created a new right for illegitimate children; that this right exists for only 180 days; and that the 180-day period is a condition qualifying the right of action and not a mere limitation on the remedy. *Accord Raspberry v. Ivory*, 67 Ark. App. 227, 998 S.W.2d 431 (1999). In response, Jimmy argues that appellant has changed her argument

---

[1] Appellees argue that Jimmy and Gladys were the real parties in interest as to the disposition of Samuel's estate. *See Gladden v. Bucy*, 299 Ark. 523, 772 S.W.2d 612 (1989).

[2] Arkansas Code Annotated § 28-39-407(b) (Repl. 2004) provides that, when a child is omitted from his father's will, the testator "shall be deemed to have died intestate with respect to the child" and the child "shall . . . recover from the devisees in proportion to the amounts of their respective shares, that portion of the estate which he . . . would have inherited had there been no will."

on appeal. In her petition for determination of heirs filed on August 14, 2002, appellant simply asserted that Jimmy had not satisfied Ark. Code Ann. § 28-9-209(d)'s requirement that a court of competent jurisdiction establish his paternity. Additionally, appellant's attorney stipulated at the January 7, 2003 hearing that the claim against the estate had been filed within 180 days. It is well settled that an appellant may not change the grounds for objection on appeal but is limited by the scope and nature of his objections and arguments at trial. *City of Benton v. Arkansas Soil & Water Conservation Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001). Indeed, appellant apparently conceded this issue at oral argument.

■ In any event, appellant has not cited, nor have we found, any case that holds that a claim asserted after a petition is filed but before an administrator is appointed is not valid for purposes of preserving an illegitimate child's rights under Ark. Code Ann. § 28-9-209(d). We affirm on this point.

In her next point, appellant contends that Jimmy failed to file his claim against Samuel's estate within the time prescribed by the nonclaim statute, Ark. Code Ann. § 28-50-101(a) (Repl. 2004), which requires that claims be filed against an estate within three months after the administratrix publishes the notice to creditors. She argues that, because Jimmy filed his petition before the estate was opened, and did not refile it after the estate was opened and within the time prescribed by the statute, he should be barred from taking his intestate share. We disagree.

■ Under the nonclaim statute, the time begins to run when the notice to creditors is published. According to Ark. Code Ann. § 28-40-103(a) (Repl. 2004), this may occur years after the decedent's death. However, Ark. Code Ann. § 28-9-209(d) requires that an illegitimate child's claim be brought within 180 days after the father's death. Both statutes cannot logically apply to the same claim. Also, the nonclaim statute can be characterized as a general statute, and Ark. Code Ann. § 28-9-209 as a specific statute; therefore, the nonclaim statute does not apply to this situation. *See Donoho v. Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994). Additionally, in *Moore v. Moore*, 21 Ark. App. 165, 731 S.W.2d 215 (1987), we noted that the statute of nonclaim comprehends such debts or demands as might have been enforced against the decedent. Certainly, Jimmy could not have brought this claim against Samuel. Therefore, we conclude that the non-

claim statute does not apply to claims brought by children under Ark. Code Ann. § 28-9-209(d) and affirm on this point.

Affirmed.

BIRD and BAKER, JJ., agree.