Bill TOMERLIN and All Arkansas Bail Bond
Company, Inc. *v.* Tom NICKOLICH, Chairman, and
Arkansas Professional Bail Bond Company and
Professional Bail Bondsman Licensing Board

99–1342                                             27 S.W.3d 746

Supreme Court of Arkansas
Opinion delivered October 12, 2000

*Ed Daniel IV P.A.*, by: *Ed Daniel IV*; and *Wilson & Associates, P.A.*, by: *Christopher L. Palmer*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Larry E. Crane*, Ass't Att'y Gen., for appellees.

DONALD L. CORBIN, Justice. Appellants Bill Tomerlin and All Arkansas Bail Bond Co., Inc., appeal the decision of the Arkansas Professional Bail Bond Company and Professional Licensing Board ("Board") revoking their licenses. This case was transferred to us from the Arkansas Court of Appeals as involving the determination of the constitutionality of a statute; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6) and (d). Appellants raise several points on appeal. We find no merit in any of their arguments and affirm.

Bill Tomerlin is a licensed bail bondsman and sole owner of All Arkansas Bail Bond Co., Inc. Tomerlin and his company were the subject of a disciplinary hearing held on July 10, 1998. Tomerlin first came under investigation when Jesus Barrios filed a complaint against him stemming from events that occurred on July 28, 1997. On that day, Barrios and a companion were trying to change a tire

on Barrios's 1991 Dodge Ram Charger truck. They were in the parking lot of the Scholars Inn Apartments in Fayetteville when John Van Curen Jr., an employee of Tomerlin's, approached them and began asking questions about Edgar Licon. The two men, who are Hispanic, spoke little English and denied knowing Licon. At some point during this exchange, Van Curen Jr. told Barrios to give him the keys to the truck, and Barrios complied. Van Curen Jr. testified that he had received a call from an informant that Licon, a bail jumper, was seen with the pair at the apartment complex. Van Curen then called Tomerlin and Patrick Sneed, also an employee of Tomerlin's. The two men arrived at the apartments shortly thereafter.

According to Van Curen Jr., Tomerlin also tried to question the men, but got no answers.[1] The Fayetteville police were then called to the scene, and they tried questioning Barrios and his companion. They also searched the Ram Charger for drugs after Van Curen Jr. insinuated that there may be drugs in the vehicle. Van Curen Jr. told the police that he had the keys to the truck and explained that it was listed as collateral on the bond for Licon. According to Van Curen Jr., the police then instructed Barrios and his companion to leave. Van Curen testified that he had paperwork indicating that the Ram Charger, a 1986 Nissan truck, and household goods located in an apartment at the Scholars Inn were listed as collateral on the bond. He stated that he did not learn until later that the Ram Charger was not actually listed on the bond for Licon.

Shortly after Tomerlin and his employees left the Scholars Inn, they received a phone call from the informant that the household items were being moved out of the apartment. According to Van Curen Jr., Tomerlin instructed him, his father, John Van Curen Sr., and another employee, James Wade, to return to the Scholars Inn and take possession of the Ram Charger, the Nissan truck, and the remaining household items. Tomerlin further instructed the men to take the vehicles out to Wade's residence. Tomerlin denied this allegation. He claimed that he never instructed his employees to take possession of the Ram Charger. According to Tomerlin, he had no idea that the truck had been taken until Van Curen Jr. notified him. Tomerlin further testified that once he learned that

---

[1]   Barrios alleged in his complaint that while questioning him about Licon, Tomerlin held a gun to his head. This allegation was never substantiated, however. The Board did not consider this allegation in determining whether to revoke Tomerlin's license.

his employees had taken the truck, he ordered them to return it to the Scholars Inn. According to Tomerlin, his employees refused to return the truck, so he then suggested they drop it off at a Wal-Mart parking lot. Tomerlin admitted, however, that he never notified the police or Barrios of the truck's whereabouts. In fact, when questioned by the Fayetteville police, Tomerlin denied having any knowledge of the truck's whereabouts. He claimed that he did not want to be implicated in a theft charge. Tomerlin and Van Curen Jr. both testified that they had no idea what ultimately happened to Barrios' truck.

After receiving Barrios's complaint, the Board assigned Norma Rowell, a private investigator, to investigate the allegations against Tomerlin. According to Rowell, Tomerlin was very uncooperative with her investigation. She stated that Tomerlin refused to meet with her without his attorney being present. Moreover, he refused to allow Rowell to interview his employees without him and his attorney being present. After about a month, Rowell was finally able to interview Tomerlin.

In the course of this investigation, other allegations against Tomerlin were uncovered and presented to the Board. The Board ultimately considered the following charges against Tomerlin and, by implication, All Arkansas Bail Bond Co., Inc.: (1) they, either directly or by their agents, took possession of Barrios's truck and actively concealed knowledge of taking the truck and its whereabouts, and such action involved fraudulent and dishonest acts; (2) they refused to cooperate with the Board's investigation; (3) they used a convicted felon as a bounty hunter or bail enforcement agent; (4) they hired John Van Curen Sr. who had never been a licensed bail bondsman, licensed private investigator, or certified law enforcement officer to work as a bail enforcement agent or bounty hunter; and (5) they paid $7,000 for a forged death certificate on a client in order to avoid paying a forfeiture. The allegation that Tomerlin had obtained a false death certificate was ultimately dismissed by the Board for lack of proof. The remaining allegations were all adopted as findings of fact by the Board. The Board then voted to revoke the licenses of both Tomerlin and All Arkansas Bail Bond Co., Inc. In addition, they levied an administrative fine in the amount of $2,500 against Tomerlin as a result of his failure to cooperate with the Board's investigation.

Tomerlin filed an appeal in the Circuit Court of Pulaski County alleging (1) that he was entitled to a *de novo* review of the Board's decision pursuant to Ark. Code Ann. § 17-19-209(g)(4) (Supp. 1997)[2]; (2) that the Board's decision was not supported by substantial evidence; and (3) that the punishment inflicted was arbitrary and capricious. In an interim order dated May 11, 1999, the trial court denied Appellants' motion for a *de novo* review. Then, in an order dated July 30, 1999, the trial court affirmed the Board's findings of fact and conclusions of law. The present appeal stems from those two orders.

■ This court's review, like that of the circuit court, is limited in scope and is directed not to the decision of the circuit court, but to the decision of the administrative agency. *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998); *Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). It is not the role of the circuit courts or the appellate courts to conduct a *de novo* review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision. *Id.* We review the entire record in making this determination. *Carlson*, 334 Ark. 614, 976 S.W.2d 934; *Arkansas Alcoholic Beverage Control Bd. v. Muncrief*, 308 Ark. 373, 825 S.W.2d 816 (1992).

We first address Appellants' argument that they were entitled to a *de novo* review of the Board's decision. The trial court refused to apply a *de novo* standard of review on the ground that section 17-19-209(g)(4) was unconstitutional because it violated the "separation of powers" doctrine. Specifically, the trial court determined that pursuant to this court's decision in *Goodall v. Williams*, 271 Ark. 354, 609 S.W.2d 25 (1980), *de novo* review of agency cases was only allowed in a "narrowly preserved circumstance, which turns on the character and legal status of the affected interests." The trial court further ruled that Ark. Code Ann. § 25-15-212 (Repl. 1996) of the Administrative Procedures Act ("APA") governed the review of this case.

■ As the State correctly points out, state licensing boards, such as the one here, are created by the General Assembly and exercise legislative functions. In *Goodall*, this court distinguished

---

[2] Section 17-19-209(g)(4) has since been repealed by Act 1477 of 1999.

those instances when *de novo* review is appropriate and when it is constitutionally prohibited. This court said in relevant part:

> The issue of constitutional propriety of de novo review by the judiciary of administrative action primarily turns upon the character and legal status of the interests which are affected by administrative action. If the interests affected by administrative actions are constitutionally or statutorily preserved or preserved by private agreement, so that their enforcement is a matter of right, de novo review by the judiciary of administrative decisions altering these interests is appropriate. On the other hand, if the interests affected are less than fixed or determined and their existence primarily depends upon executive or legislative wisdom, de novo review is inappropriate, and judicial review is basically limited to a determination of whether these interests have been arbitrarily or capriciously affected. The doctrine of separation of powers therefore restricts the judiciary to a very limited review of those matters which are left to the wisdom of the executive in the application or execution of laws but imposes upon the judiciary the obligation to redetermine the matter when the executive redefines private rights.

*Id.* at 356, 609 S.W.2d at 27 (citations omitted).

Here, the right of Appellants to be licensed is not constitutionally or statutorily preserved. Nor is such a right preserved by private agreement. The requirements that must be met before a person may be licensed as a professional bail bondsman are codified at Ark. Code Ann. §§ 17-19-201 to 205 (Repl. 1995). Arkansas Code Annotated § 17-19-106 (Repl. 1995) created and empowered the Board to administer and enforce the licensing requirements for bail bond companies and bail bondsmen. Moreover, that section expressly grants the Board the authority to establish reasonable rules and regulations necessary to carrying out its duty of regulating bond companies and bondsmen.

■ ■ This court has said that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Carlson*, 334 Ark. 614, 976 S.W.2d 934. Because decisions regarding the licensing of bond companies and their employees turn on executive wisdom, it

is appropriate to limit the scope of review on appeal. *De novo* review of such a decision would violate the "separation of powers" doctrine, and as such, section 17-19-209(g)(4) was unconstitutional. Accordingly, Appellants' argument on this point fails.

■ Next, Appellants contend that this court has set forth varying tests for substantial evidence, and they urge us to adopt a test set forth by the Eight Circuit Court of Appeals in *Loving v. Department of Health and Human Servs.*, 16 F.3d 967 (8th Cir. 1994). There is absolutely no merit to this argument. Our case law discussing the issue of whether an administrative agency's decision is supported by substantial evidence is consistent. *See Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999); *Carlson*, 334 Ark. 614, 976 S.W.2d 934. In *Smith*, this court set forth the following test for substantial evidence:

> Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture. The challenging party has the burden of proving an absence of substantial evidence. To establish an absence of substantial evidence to support the decision the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence.

*Id.* at 362, 994 S.W.2d at 461 (citations omitted).

■ The test advocated by Appellants as set out in *Loving,* calls for a balancing of all the evidence presented on the record. Appellants, however, fail to demonstrate why this court should abandon its long-established principle of considering only that evidence that supports the agency's decision. This court has consistently refused to overturn precedent where an appellant fails to present a compelling argument warranting reversal of this court's case law. *Nation v. Ayres*, 340 Ark. 270, 9 S.W.3d 512 (2000); *Efurd v. Hackler*, 335 Ark. 267, 983 S.W.2d 386 (1998). Accordingly, Appellants' argument on this point fails.

■ Appellants next argue that there was not substantial evidence to support the Board's decision. We disagree. The Board's

decision to revoke Appellants' licenses was supported by testimony from both Van Curens, as well as the affidavit of Barrios that was admitted into evidence. The only evidence disputing Tomerlin's involvement in the disappearance of Barrios' truck was his own denials. It is the prerogative of the Board to believe or disbelieve any witness and to decide what weight to accord the evidence. *Carlson*, 334 Ark. 614, 976 S.W.2d 934. Moreover, Tomerlin admitted that he withheld information regarding the disappearance of Barrios's truck from authorities in order to protect his own interests.

■ Other evidence considered by the Board included testimony by Van Curen Jr. that Kevin Vaughn, a convicted felon, accompanied him on two different occasions to apprehend bail jumpers. According to Van Curen Sr., Caroline Tomerlin, Tomerline's wife, notarized an agreement authorizing him to act as a bounty hunter for All Arkansas Bail Bond Co., Inc. A copy of this agreement was introduced at the hearing; however, Mrs. Tomerlin denied ever notarizing such an agreement. Van Curen Sr. further testified that he accompanied his son on trips to apprehend bail jumpers, even though he was not, nor ever had been, a licensed bondsman. A review of the record in this case reveals that there was substantial evidence to support the Board's decision.

■ Finally, Appellants argue that the punishment imposed by the Board was arbitrary, capricious and overly harsh, and asks this court to remand this matter for the determination of a more appropriate punishment. Administrative actions may be considered arbitrary and capricious where they are not supported by any rational basis. *Smith*, 338 Ark. 354, 994 S.W.2d 456; *Partlow v. Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980). To set aside an agency decision as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoned action, without consideration and with a disregard of the facts and circumstances of the case. *Id.* This court has stated that the requirement that an administrative decision not be arbitrary and capricious is less demanding than the requirement that it be supported by substantial evidence. *Beverly Enter.-Ark., Inc. v. Arkansas Health Servs. Comm'n*, 308 Ark. 221, 824 S.W.2d 363 (1992). An action is not arbitrary simply because the reviewing court would have found differently. *Smith*, 338 Ark. 354, 994 S.W.2d 456.

In the present action, Appellants first argue that the imposition of the $2,500 fine was inappropriate in light of the fact that any delay in the investigation stemmed from scheduling problems and Tomerlin's desire to have an attorney present during any interview. This argument ignores, however, Tomerlin's consistent refusal to allow the Board's investigator to talk with his employees, including those employees who were no longer working for Tomerlin. Further, the Board's investigator testified that she repeatedly attempted to contact Tomerlin, with no success until over a month later. In light of this evidence, we cannot say that the Board's decision to impose an administrative fine was arbitrary and capricious.

As to the revocation of their licenses, Appellants argue that this penalty was arbitrary and capricious because the evidence was undisputedly in their favor and because Appellants have no prior disciplinary record. Appellants' first contention is erroneous, as we have already concluded that there was substantial evidence to support the Board's decision. This court has stated that once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary. *Id.* We are also unpersuaded by Appellants' second contention. The egregious nature of Appellants' offenses warranted the punishment of revocation. Accordingly, we cannot say that the Board's decision to revoke Appellants' licenses was arbitrary and capricious.

Affirmed.