Teddy WREN *v.* SANDERS PLUMBING SUPPLY,
Fremont Indemnity Insurance

CA 03-102                                                      117 S.W.3d 657

Court of Appeals of Arkansas
Division III
Opinion delivered September 17, 2003

*Tolley & Brooks, P.A.*, by: *Jay N. Tolley*, for appellant.

*Judy W. Rudd*, for appellee.

Terry Crabtree, Judge. In this workers' compensation case, the Commission affirmed and adopted the decision of the Administrative Law Judge denying permanent disability benefits, additional medical treatment, and second-injury fund liability. On appeal, the appellant, Teddy Wren, claims that the Commission's decision was not supported by substantial evidence. We affirm.

Appellant worked for the appellee, Sanders Plumbing Supply, for eight years as a handyman and delivery person. On September 3, 1998, as he was delivering a load of supplies to a customer, his vehicle was rear-ended by another vehicle. As a result, appellant sustained a neck and back injury. Appellee accepted appellant's injury as compensable and paid his medical expenses along with temporary-total disability benefits. However, appellant alleged that he was permanently and totally disabled as a result of this motor-vehicle accident. Appellant remained off work for approximately three months until he was released by his physician to return to work at full duty on December 14, 1998. He continued to work until January of 1999.

In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). Substantial evidence exists if reasonable minds could reach the same conclusion. *Daniels v. Arkansas Dep't Human Servs.*, 77 Ark. App. 99, 72 S.W.3d 128 (2002); *Lee v. Dr. Pepper Bottling Co.*, 74 Ark. App. 43, 47 S.W.3d 263 (2001). When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Clardy v. Medi-Homes LTC Serv. LLC*, 75 Ark. App. 156, 55 S.W.3d 791 (2001).

On September 28, 1998, just weeks after the accident, Dr. Terence Braden recommended that appellant return to light duty work. The next day, Dr. Wilbur Giles evaluated appellant and concluded, "I do not foresee that he is in need of any surgical intervention." Dr. Giles reviewed appellant's MRI and found only a mild disc bulge with no overt herniation. Dr. Giles was the only neurosurgeon who evaluated appellant regarding this injury. Dr.

Braden then released appellant to return to full duty on December 14, 1998, without an impairment rating.

Previously Dr. Braden had ordered a functional capacity evaluation. However, the examiner reported that appellant failed to give maximum effort and the results of the test were considered invalid. In a chart note dated December 1, 1998, Dr. Braden stated:

> I do not agree with the final assessment in the non-material handling test where it is recommended that [appellant] never do any reaching, bending, squatting, etc. These are based upon submaximal results and subjective complaints that are not objectively measured since they were not completed during his evaluation.

Dr. Braden then ordered an MMPI evaluation. However, appellant's wife assisted him during the evaluation, which was contrary to accepted testing procedure. Therefore, the results of that test were also considered invalid. Dr. Braden concluded that appellant's September 3, 1998 injury did not impede his ability to return to work. When he released appellant to return to work, Dr. Braden stated:

> I have reviewed [appellant's] evaluations, examinations, his Functional Capacity Evaluation, and I can find no objective evidence to explain his marked subjective complaints of pain. They appear to be psychological in origin and not related to the injury that he reports to have sustained.

On January 4, 1999, Dr. Wayne Bruffett evaluated appellant, agreed with Dr. Braden's assessment, and noted:

> [Appellant] says that he is unable to work at his previous capacity. He does not have an objective finding on his examination or on his MRI scan that would limit his ability to work but he says that due to his pain he is unable to continue. His complaints of pain seem to be out of proportion to what is seen on the MRI.

Dr. Bruffett felt that appellant's back condition did not warrant surgical intervention and referred him to Dr. Bruce Safman, who had treated appellant for an earlier injury. Dr. Safman noted that appellant had "a history of psychological problems" and that "there is an extremely strong functional or emotional component to his problem." He concluded:

> I am not optimistic about conservative resolution of his symptoms. This patient, according to Dr. Bruffett, has had x-rays of the cervical, thoracic and lumbar spine, MRIs of the cervical and lumbar spine and there is no explanation for his symptomatology.

Appellant's physicians could find no physical explanation for the continued pain symptoms which, according to appellant, rendered him incapable of working.

On March 10, 1999, appellant received a psychological evaluation from Susan Estes, licensed psychological examiner, and was found to be functioning within a mild range of mental retardation with a full scale IQ score of 52. No objective findings were provided to link any psychological condition with the September 3, 1998 motor-vehicle accident.

On February 20, 2001, Dale Thomas, a vocational expert, evaluated appellant. Thomas reviewed appellant's medical records and a number of psychological evaluations which had been performed, including the report in which appellant had been diagnosed with mild mental retardation. After considering both appellant's physical and mental status, Thomas opined that appellant was capable of returning to work. Thomas stated:

> [T]here are no physical reasons that he cannot return to his previous job or other jobs. He's also employable based on the intellectual abilities he has or does not have. I think that functionally illiterate people are employable.

Thomas also remarked, "[Appellant] is not physically precluded from working." In addition, Thomas stated, "Low intellectual functioning alone does not preclude a return to work. Indeed, [appellant] worked for ten years for [a previous] employer. I believe that he could return to work with other employers as well that have routine work that does not involve literacy skills."

In his brief, appellant asks us to review only one finding of fact made by the Commission. Appellant directs us to finding number 7, wherein the Commission found:

> That Claimant has failed to prove by a preponderance of the evidence that he is entitled to any permanent disability benefits; specifically, the Claimant has failed to prove that the compensable injury of September 3, 1998[,] was the major cause of any perma-

nent impairment or disability sustained by Claimant; Claimant has failed to prove by any objective findings the existence, degree and extent of any permanent impairment or disability having been sustained in his work-related accident of September 3, 1998; and has failed to causally relate any current impairment or disability to the work-related accident of September 3, 1998.

We note that appellant does not challenge the Commission's determination that he was not entitled to additional medical treatment.

The Commission cited to *Wal-Mart Stores, Inc. v. Connell*, 340 Ark. 475, 479, 10 S.W.3d 727, 884 (2000), for the proposition that a claimant must prove a specific percentage of permanent impairment before he is eligible for permanent disability benefits and wage-loss benefits:

> However, [p]ursuant to the plain language of section 11-9-522(b)(1), "the percentage" of permanent physical impairment must be established before the Commission can consider a claim for permanent partial-disability benefits "in excess of the employee's percentage" of permanent physical impairment. Similarly, any consideration of "the employee's age, education, work experience, and other matters reasonably expected to affect his earning capacity" may not occur until the Commission has first determined "the percentage" of permanent physical impairment.

In this case, appellant offered no medical evidence containing a physician's report that assigned him a permanent impairment rating. Without such a rating, a claimant is not entitled to permanent disability benefits or wage-loss benefits. *See id.* We believe that the Commission had substantial evidence to find that appellant failed to prove entitlement to permanent disability benefits.

We note that appellant does not challenge the Commission's finding that the second-injury fund has no liability. In fact, appellant repeatedly stated in his brief that he never sought second-injury fund liability. Upon review of the record, we cannot find that appellee cross-appealed this issue. Yet, appellee argues the merits of the issue in its brief. We have held that when an "appellee has failed to file a cross-appeal, as it was permitted to do. . . we will not address its challenge to the Commission's finding of fact." *Moser v. Arkansas Lime Co.*, 40 Ark. App. 108, 110, 842 S.W.2d 456, 457 (1992) (supplemental opinion denying

rehearing). Likewise, in this instance, we will not address the merits of appellee's challenge to the Commission's finding regarding the lack of second-injury fund liability, as appellee has failed to file a cross-appeal.

Affirmed.

HART and ROAF, JJ., agree.