Jamie MANN *v.* ARKANSAS PROFESSIONAL BAIL
BONDSMAN LICENSING BOARD

CA 04–236                                                     199 S.W.3d 84

Court of Appeals of Arkansas
Opinion delivered December 1, 2004

394

*Wilber Law Firm, P.A.,* by: *Norman C. Wilber,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Alice Lightle,* Ass't Att'y Gen., for appellee.

Andree Layton Roaf, Judge. Jamie Mann, a bail bondsman, appeals from the Pulaski County Circuit Court's decision following an appeal to that court from the Arkansas Professional Bail Bondsman Licensing Board. On September 18, 2000, the

Board revoked Mann's license after finding that he had violated Ark. Code Ann. § 17-19-210(a)(3) (Repl. 1995), which states that the Board may suspend or revoke a license if the licensee has committed a fraudulent or dishonest act or practice, or has demonstrated incompetence or untrustworthiness. The circuit court affirmed the Board's finding that Mann had violated the statute but modified the penalty to a suspension of his license for one year. We affirm the Board's finding that he violated the statute. Because the Board has not appealed the modification of its decision, we do not disturb the circuit court's reduction of the penalty.

Sharon Patton was arrested in Fulton County on drug charges in June 2000 and was released on her own recognizance. On June 28, 2000, Mrs. Patton called Daniel Brown of First Arkansas Bail Bonds, Inc. (First Arkansas), and told him that she would need a bond because she was required to turn herself in to the sheriff's office the next day. On June 29, 2000, on behalf of First Arkansas, Mr. Brown wrote a $30,000 bond for Mrs. Patton. She and her friend, James Foster, signed a promissory note, security agreement,[1] and indemnity agreement. Mrs. Patton and her husband, Richard Patton, also gave First Arkansas a mortgage on their real property in Fulton County to secure the bond.

Mrs. Patton agreed to meet Mr. Brown at his office at 6:00 p.m. on June 30, 2000, to pay the bond's $3,000 premium. Mrs. Patton, however, did not appear at Mr. Brown's office as they had agreed. Later that night, Mr. Foster called Mr. Brown and told him that another bonding company had written a second bond for Mrs. Patton and had canceled the First Arkansas bond.

Mann is an employee of Affordable Bail Bonds, Inc. (Affordable). Mann, on behalf of Affordable, wrote the second $30,000 bond for Mrs. Patton, on a long-term payment plan, on June 30, 2000. On July 1, 2000, Mrs. Patton wrote a letter to Mr. Brown, in which she stated: "On the date of conversation, I exercised my lawful right to change bail bond agents within the 3 day civil rights limitations. Since no money was exchanged on the above mentioned bond, I did have this right."

Mr. Brown filed a complaint against Mann with the Board on July 10, 2000, which stated in part:

---

[1] The security agreement covered several types of personal property, including vehicles, tools, household goods, and bank accounts.

On July 1, 2000, Brad Parnell who is an agent with First Arkansas Bail Bond called Sharon Patton to question her about what had happened. She told him that Affordable Bail Bonds had agreed to write the bond on a long term payment plan and all she had was $800.00 and she gave that to them. She also stated that according to Jamie Mann, she had civil rights and she could void our contract within three days. . . .

. . . .

On July 6, 2000 I contacted Sharon Patton again to get the matter resolved. I asked her to explain to me what had happened. She stated "Jamie Mann called me and asked if I had paid any money to First Arkansas and I replied no, I am on my way to pay them $800.00." He advised her not to pay us any money because our contract was no good if no money has changed hands. He the [sic] advised her to go to the jail and surrender herself and he would write the bond on a long term payment plan on the premium.

The Board notified Mann of the complaint, and he filed a responsive affidavit in which he denied any wrongdoing. After sending Mann notice of probable cause to conduct a hearing, the Board conducted a hearing on September 8, 2000. Its decision included the following findings of fact:

7. Later that night [June 30, 2000], Mr. Brown received a call from co-signer James Foster stating that another bonding company had written a second bond for Mrs. Patton and the other bail bondsman had "canceled the bond" written by Dan Brown and First Arkansas.

8. On July 1, 2000, Mr. Brown and Brad Parnell, another agent for First Arkansas, learned that Jamie Mann and Affordable had written the second bond for Mrs. Patton on a long-term payment plan. Mr. Brown and Mr. Parnell also learned that Respondent Jamie Mann had advised Mrs. Patton that she had "civil rights" and could void her contract with First Arkansas within three days of the day the bond was written.

9. On July 1, 2000, Mrs. Patton forwarded a letter to Mr. Brown stating she was exercising "her lawful right to change bail bond agents within the three day civil rights limitations" and stating she had this right since no money had exchanged hands on the bond written by Mr. Brown.

10. Respondent Jamie Mann encouraged Mrs. Patton to surrender herself so her bond with First Arkansas would be canceled and he could bond her out a second time. Respondent Jamie Mann provided legal advice to Mrs. Patton regarding the consequences of attempting to cancel her bond with Mr. Brown and First Arkansas.

11. Mr. Brown and First Arkansas never agreed to have Mrs. Patton's bond written by Mr. Brown on June 29, 2000 canceled.

The Board concluded that Mann had violated Ark. Code Ann. § 17-19-210(a)(3) and revoked his license. It did not hold Affordable responsible for Mann's acts. Mann appealed the Board's decision to the circuit court, which found that substantial evidence supported the Board's findings of fact and its conclusion that Mann had violated Ark. Code Ann. § 17-19-210(a)(3). It found the revocation of Mann's license, however, to be "unduly harsh" and modified the penalty to a one-year suspension. Mann appealed from the circuit court's decision; however, the Board has not filed a cross-appeal of the decision modifying its penalty.

Arkansas Code Annotated section 25-15-212(h) (Repl. 2002) provides that we may reverse or modify an administrative agency's decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. See Dep't of Human Servs. v. Parker, 88 Ark. App. 222, 197 S.W.3d 33 (2004).

Our review is limited in scope and is directed not to the circuit court but to the decision of the administrative agency. Tomerlin v. Nickolich, 342 Ark. 325, 27 S.W.3d 746 (2000). It is not the role of the circuit courts or the appellate courts to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision. Id. Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture. Id. The challenging party has the burden of proving an absence of substantial evidence. Id. To establish an absence of substantial evidence to support the decision, the chal-

lenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id.* It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id.* We review the entire record in making this determination. *Id.* In reviewing the record, we give the evidence its strongest probative force in favor of the agency's ruling. *Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002). Between two fairly conflicting views, even if the reviewing court might have made a different choice, the Board's choice must not be displaced. *Id.*

■ Administrative actions may be considered arbitrary and capricious when they are not supported by any rational basis or hinge on a finding of fact based on an erroneous view of the law. *Id.* To set aside an agency decision as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoned action, without consideration, and with a disregard of the facts and circumstances of the case. *Id.* The requirement that an administrative decision not be arbitrary and capricious is less demanding than the requirement that it be supported by substantial evidence. *Id.* An action is not arbitrary simply because the reviewing court would have found differently. *Id.* If the Board's decision to revoke Mann's license is supported by substantial evidence, it necessarily follows that it is not arbitrary and capricious. *Id.*

■ Bail bondsmen and bail-bond companies are required to conduct their bail-bond businesses in conformity with the statutes governing the profession, Ark. Code Ann. § 17-19-101 through 17-19-402 (Repl. 2001 and Supp. 2003), and the rules and regulations promulgated pursuant to Ark. Code Ann. § 17-19-106 (Repl. 2001), the Arkansas Professional Bail Bond Company and Professional Bail Bondsman Licensing Act. The Act provides that the Board has the authority to administer and enforce the statutes, as well as the rules and regulations promulgated thereunder, in order to carry out its duty of licensing and regulating professional bail bondsmen and professional bail-bond companies. *See Arkansas Prof'l Bail Bondsman Licensing Bd. v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002).

■ Administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Arkansas Prof'l Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002). Because decisions regarding the licensing of bond companies and their employees turn on executive wisdom, it is appropriate to limit the scope of review on appeal. *Tomerlin v. Nickolich, supra.*

■ With these principles in mind, we consider Mann's argument on appeal that the Board's findings are not supported by substantial evidence. Mann asserts that the simple act of knowingly writing a second bond is not expressly prohibited by statute or regulation. Mann also contends that the Board violated his due-process rights in revoking his license because his actions were not prohibited by law. The abstract and addendum do not demonstrate that the Board ruled on this argument. Failure to obtain a ruling will preclude even a constitutional issue's being considered on appeal. *Technical Servs. of Ark., Inc. v. Pledger*, 320 Ark. 333, 896 S.W.2d 433 (1995).

Arkansas Code Annotated section 17-19-210(a)(3) provides that the Board may revoke a bondsman's license if he has committed any fraudulent or dishonest acts or practices or has demonstrated his incompetence or untrustworthiness to act as a licensed bondsman. Mann denied having done anything improper or untrustworthy but admitted that he had agreed to write Mrs. Patton's second bond and had completed the paperwork, "short of writing the bond," when he met her at the jail on the evening of June 30, 2000. He argued that he had not actually written the second bond before the first bond "was surrendered" and denied telling Mrs. Patton that she had the legal right to cancel the first bond.

At the hearing, Mrs. Patton was less sure of Mann's advice than she had been when the Board's investigator interviewed her about her "civil rights," and about his encouragement to surrender herself on First Arkansas's bond so that it would be canceled. She admitted that she had told the investigator on July 31, 2000, that Mann had been aware of the original bond and that he had informed her that, if she had not yet given Mr. Brown any money,

she had a "three-day civil right" to change bondsmen. Mr. Foster also admitted at the hearing that he had previously informed the investigator about a discussion of this alleged right with Mann.

Obviously, the Board did not believe Mann's denial of having told Mrs. Patton that she could cancel the first bond within three days. In light of Mrs. Patton's and Mr. Foster's reluctant admissions that they had told the Board's investigator that Mann had done so, and deferring to the Board's prerogative to assess the credibility of the witnesses and weigh the evidence, we hold that the Board's findings that Mann encouraged Mrs. Patton to cancel her first bond and that he violated the statute are supported by substantial evidence.

Mann further contends that, even if there is substantial evidence that he violated the statute, the revocation of his license was an abuse of the Board's discretion. He asserts that a more appropriate penalty would have been a fine as permitted by Ark. Code Ann. § 17-19-211 (Repl. 2001). In response, the Board states that revocation was appropriate because Mann's license had been suspended within the previous twenty-four months. At the hearing, the assistant attorney general asked the Board to find Mann guilty and "revoke his license, just as [it] did before." Arkansas Code Annotated section 17-19-210(d) provides: "If the board finds that one (1) or more grounds exist for the suspension or revocation of a license and that the license has been suspended within the previous twenty-four (24) months, then the board shall revoke the license." The issue of his earlier suspension, however, was not fully developed before the Board, and therefore, we will not consider it.

With regard to the Board's decision to revoke Mann's license, we note that the Board has not appealed from the circuit court's modification of the revocation to a one-year suspension, which was within the circuit court's powers set forth in Ark. Code Ann. § 25-15-212(h). *See Baxter v. Arkansas State Bd. of Dental Exam'rs*, 269 Ark. 67, 598 S.W.2d 412 (1980); *Arkansas State Bd. of Pharmacy v. Isely*, 13 Ark. App. 111, 680 S.W.2d 718 (1984). The Board, of course, had the burden of appealing from the circuit court's reduction of the penalty but failed to do so. Because it did not file a cross-appeal, we are without jurisdiction to address the argument made in its brief that this court should reinstate its penalty, the revocation of Mann's license. *Brown v. Minor*, 305 Ark.

556, 810 S.W.2d 334 (1991). *See also Boothe v. Boothe*, 341 Ark. 381, 17 S.W.3d 464 (2000); *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999); *Egg City of Ark., Inc. v. Rushing*, 304 Ark. 562, 803 S.W.2d 920 (1991). *See also Wren v. Sanders Plumbing Supply*, 83 Ark. App. 111, 117 S.W.3d 657 (2003); *McHalffey v. Nationwide Mut. Fire Ins. Co.*, 76 Ark. App. 235, 61 S.W.3d 231 (2001); *Broadhead v. McEntire*, 19 Ark. App. 259, 720 S.W.2d 313 (1986). In *Van Curen v. Arkansas Professional Bail Bondsman Licensing Board*, *supra*, we affirmed the circuit court's affirmance of the Board's revocation of the bondsman's license but refused to address that portion of the circuit court's decision reversing the Board's directive that the bondsman return a bond premium because the Board had not cross-appealed from that aspect of the court's decision.

Accordingly, we hold that the effect of the Board's failure to cross-appeal from the circuit court's reduction of the revocation of Mann's license to a one-year suspension is to leave the court's modification of the penalty intact. *See also Arkansas State Bd. of Pharmacy v. Isely, supra* (declining to address the two findings of the Board that the circuit court found to be supported by substantial evidence because neither party had appealed on those issues). We thus need not address Mann's argument that the revocation of his license was an abuse of the Board's discretion.

For these reasons, we affirm the Board's decision as modified by the circuit court.

Affirmed.

ROBBINS and BIRD, JJ., agree.