Rebecca CHANDLER *v.* ARKANSAS APPRAISER LICENSING & CERTIFICATION BOARD

CA 07-193                                                    269 S.W.3d 827

Court of Appeals of Arkansas
Opinion delivered December 12, 2007

*Koch Law Firm*, by: *Reggie Koch*; *Carol D. Nokes*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Warren T. Readnour*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant Rebecca Chandler, a certified residential appraiser, appeals from an order of the Pulaski County Circuit Court affirming an order by appellee Arkansas Appraiser Licensing & Certification Board. The Board suspended Chandler's license for six months, to be followed by a six-month probationary period. The Board also ordered Chandler to pay a civil penalty of $2,000 and complete two remedial courses and examinations.[1] Chandler raises three points for reversal. We affirm.

*Background*

The Board received a March 28, 2001, letter from the Arkansas Securities Department requesting review of several appraisals that Chandler prepared for Guaranty Lending, Inc., resulting from the Securities Department's investigation into Guaranty, together with a letter to the Securities Department from another appraiser, Tom Ferstl. The Board also received a referral from Fannie Mae concerning one of Chandler's appraisals.

On May 31, 2002, the Board served an order and notice of hearing on Chandler, alleging that Chandler had violated certain provisions of the Uniform Standards of Professional Appraisal Practice (Standards). Arkansas Code Annotated section 17-14-305(a)(1) (Repl. 2001) requires that appraisers comply with the Standards.[2] Among other things, the Standards require that the appraiser not commit a substantial error of omission or commission that significantly affects an appraisal; not render appraisal services

---

[1] We remanded Chandler's first appeal to the Board to make sufficient findings to allow proper review of its actions. *Chandler v. Arkansas Appraisers Licensing & Certification Bd.*, 92 Ark. App. 423, 214 S.W.3d 861 (2005).

[2] The Board has also adopted the Standards as part of its rules by reference.

in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affect the credibility of those results; analyze any current listing of the property, if available to the appraiser in the normal course of business; and analyze any sales within one year for residential property. In addition, an appraiser must clearly and accurately set forth the appraisal in a manner that will not be misleading and contains sufficient information to enable the intended user to understand the report properly. The Board conducted a hearing on May 20, 2003.

### The Evidence

Jim Martin, the Board's executive director, testified that the Board's investigation was prompted by the letter from the Securities Department and another letter from Ferstl. He said that the normal procedure was to notify an appraiser within a reasonable time that a complaint had been filed. He admitted that Chandler was not promptly notified because the Securities Department indicated that they would not proceed until the FBI completed its investigation into Guaranty. Martin stated that the Board did likewise and did not notify Chandler, despite a "mandate" that the Board should not allow complaints to remain unresolved for more than one year. He said that he considered the FBI's involvement to be an unusual circumstance. After a meeting with two FBI agents in May 2002, Martin said that the Board was allowed to proceed with its investigation of Chandler. Martin stated that, after a preliminary investigation and a response from Chandler's attorney, two Board members found probable cause to employ investigators to review Chandler's appraisals at issue. This review was completed in February 2003, and Martin said that the decision was made to proceed with a hearing before the full Board.

Jay Hall, a licensed appraiser engaged by the Board to review three of Chandler's appraisals, testified that he conducted his review in accordance with the Standards. Regarding the appraisal of 1023 South Madison, he stated that Chandler failed to note a garage in her appraisal, failed to notice settlement problems, and misstated that the windows were wooden when they were aluminum. In his opinion, this resulted in Chandler's committing a substantial omission that significantly affected her appraisal. He also stated that Chandler further violated the Standards by failing to disclose to Fannie Mae sales data on the comparables used in the appraisal. Hall stated that, because of the comparables Chandler

used, her valuation was higher than it should have been and, thus, misleading. On cross-examination, he admitted that his review contained mistakes, such as his noting that the central heat and air did not work when only the central air was inoperable. He also noted that Chandler's report listed a gravel driveway while his report listed a concrete driveway when, in reality, it is a concrete driveway covered with gravel.

In his review of Chandler's appraisals of 1602 Welch and 2909 John Barrow Road, Hall stated that Chandler's appraisals were rendered in a careless or negligent manner because she made a series of errors that, when considered in the aggregate, would affect the credibility of the appraisal. He stated that Chandler's effective age of each home was too low and that the comparables used were not representative of the subject properties. He admitted that he was not able to inspect the interiors of either subject property. Hall pointed out other problems with the comparables. He admitted that the passage of time between the appraisal and the review is a factor in the accuracy of the review. Hall also stated that Chandler violated the Standards by listing, but failing to analyze, the $58,000 sales price on the Welch Street property.

Susan Benson, the other appraiser engaged by the Board, testified that she reviewed Chandler's appraisals of 1305 Booker, 5008 West 31st Street, and 5120 West 31st Street in accordance with the Standards after obtaining data from the relevant time period. She concluded that Chandler did not analyze all of the sales contracts concerning the Booker property. She also noted that Chandler used comparables that were in superior neighborhoods to the subject property and that this would significantly affect the appraisal. Concerning Chandler's appraisals of the West 31st Street properties, Benson stated that Chandler again used comparables from superior neighborhoods. She noted that it was a "high crime area," which reduces property value. She noted that Chandler failed to report a fireplace on one comparable or a basement on another but stated that these omissions would not affect the credibility of Chandler's reports. She also stated that Chandler's effective age for the homes was too low and that she failed to properly analyze neighborhood characteristics.

Although she testified that she was familiar with the Fannie Mae guidelines, Benson stated that she did not consider them applicable in conducting her reviews. She also described the neighborhoods as "high crime" even though Fannie Mae guidelines prohibit the use of terms that could be considered racial

stereotypes. She admitted that she did not inspect the interiors of the homes. In her opinion, Chandler's comparables from superior neighborhoods resulted in a higher value being shown and were thus misleading.

During her testimony, Chandler stated that she believed that her rights had been violated and that she was not given the opportunity to informally discuss the matter prior to proceeding to a hearing. She stated that, during the time covered by the investigation, she was under pressure because of family and professional obligations but that she conducted approximately 750 appraisals in 2000. She was able to complete such a large number of appraisals with the assistance of five appraisers whom she was mentoring and training. She stated that she personally inspected five of the six properties under scrutiny, the Welch Street property being inspected by one of her trainees. She also described her usual practice in obtaining data for an appraisal. She stated that she has changed some of her methods as a result of the investigation. Chandler stated that she was familiar with the Standards and the Fannie Mae guidelines and that she tries not to use comparables that do not meet those guidelines. She denied that Guaranty put pressure on her that her appraisals be for a minimum amount.

Chandler stated that she believed her appraisals to be credible but admitted to making mistakes by not including all relevant sales history. She also stated that the review appraisers also made mistakes in their reports, including violation of federal law. As an example, she admitted to not analyzing the sales contracts on the subject properties, which she said is an obvious violation of the standards. Other examples of mistakes she made included a mistake in the cost approach to the appraisal on 5120 West 31st Street and by not reporting all sales history as required by the Standards. She also conceded that pictures of some of the comparables showed that they appeared to be in better condition than the subject properties.

The Board found Chandler guilty of violating the Standards and imposed punishment. Following this court's remand, the Board held another hearing on February 14, 2006, and adopted more specific findings of fact. Those findings explained in great detail the problems revealed with each of Chandler's appraisals at issue. The final finding was that Chandler had provided her client with appraisals containing misleading statements, omissions, and inconsistencies. The findings were prepared by Jim Martin from the notice sent to Chandler in May 2002. The Board also adopted

the same punishment it had previously imposed — suspension of Chandler's license for six months, to be followed by a six-month probationary period, payment of a civil penalty of $2,000, and completion of two remedial courses and examinations. Chandler again sought judicial review. The circuit court affirmed the Board, and this appeal followed.

## Standard of Review

It is not this court's role to conduct a de novo review of the circuit court proceeding; rather, our review is directed at the decision of the administrative agency. *Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). When reviewing administrative decisions, we review the entire record to determine whether there is any substantial evidence to support the administrative agency's decision, whether there is arbitrary and capricious action, or whether the action is characterized by abuse of discretion. *Arkansas Dep't of Human Servs. v. Schroder*, 353 Ark. 885, 122 S.W.3d 10 (2003).

To determine whether a decision is supported by substantial evidence, we review the whole record to ascertain if it is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* To establish an absence of substantial evidence to support the decision, the party challenging the decision must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusions. *Id.* Substantial evidence is valid, legal, and persuasive evidence. *Id.* To set aside an agency decision as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoned, without consideration and with a disregard of the facts and circumstances of the case. *See Partlow v. Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980).

## Arguments of Appeal

Chandler first argues that the Board's decision was based on unlawful procedure that prejudiced her rights. During her testimony, Chandler asserted that her rights had been violated but did not specify how the violations occurred. She now asserts several procedural violations that allegedly occurred, such as the Board's failure to follow its own rules in failing to properly and timely notify her of the complaint made by the Securities Department and

the Board's using stale evidence in the form of appraisals made by investigators for the Board approximately two years after she performed the appraisals under scrutiny.

According to Chandler, the Board violated its own rules by considering the letter from the Arkansas Securities Department to be a "complaint" to be investigated because the letter did not state the issues of the complaint and the dates on which the events leading to the complaint occurred, as required by the Board's rules. Where the agency's failure to follow its own procedural rules is urged on appeal, the applicable question on review is "whether the [Board's] decision is based upon unlawful procedure." *Stueart v. Arkansas State Police Comm'n*, 329 Ark. 46, 50-51, 945 S.W.2d 377, 379 (1997). The Board's investigation of Chandler was proper because Ark. Code Ann. § 17-14-206 (Repl. 2001) allows the Board, after notice and a hearing, to take disciplinary action against an appraiser *on its own motion*, with or without a "proper" complaint. It is undisputed that the Board sent Chandler an order and notice of hearing identifying the date of the hearing and the allegations against her. Further, the Board did receive a proper complaint from Fannie Mae concerning one of Chandler's appraisals.

For the next part of this point, Chandler argues that the Board failed to timely inform her of the "complaint" from the Securities Department and that this prejudiced her rights. As noted above, the Board sent Chandler a proper order and notice of hearing setting forth the charges against her. Jim Martin testified that the Board attempts to follow a guideline that complaints not be allowed to remain unresolved for more than one year. However, the guideline or "mandate" is not part of the governing statutes or the Board's own rules. The only statutory authority imposing a time limit on the Board's investigations of appraisers is Ark. Code Ann. § 17-14-206(b) (Supp. 2007), which was enacted in 2005 and places a three-year limitation on investigations. Chandler makes no argument concerning this statute. Further, Martin stated that the request by the Securities Department and the FBI that the investigation be delayed while the FBI proceeded with its investigation constituted unusual circumstances warranting the delay.

As a further part of this point, Chandler argues that Hall and Benson made errors in their reviews of her appraisals and that these

errors render the Board's acceptance of their testimony arbitrary and capricious. Chandler, as the party challenging the Board's decision, has the burden of proving an absence of substantial evidence. *Williams v. Arkansas State Bd. of Physical Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003). To establish an absence of substantial evidence to support the decision, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.*

Chandler points out that Hall and Benson admitted that they did not inspect the interiors of all six homes they reviewed. Further, Hall admitted that he had missed some items such as one property having a concrete and gravel drive that he had labeled a concrete drive. He also stated that there were typographical errors in his report. Chandler also argues that, because Benson's reviews used the term "high crime area," Benson engaged in discriminatory "redlining" that is prohibited by state and federal law and, therefore, her reviews cannot constitute substantial evidence to support the Board's decision.

The fact that Hall and Benson made mistakes in their reviews goes to the weight to be given to their reviews and explanatory testimony; nevertheless, the reviews provided some evidence from which the Board could conclude that Chandler violated the Standards. Their testimony and reviews document the errors Chandler made in the six appraisals at issue. Even if we did not consider Benson's testimony, it would still leave Hall's testimony to support the Board's action. Further, Chandler admitted to a violation of the Standards in that she did not analyze the sales contract on one of the subject properties, as well as her agreement that pictures of at least one of the comparables appears to support the conclusion that the comparable was in superior condition to the subject property. It is the Board that determines the weight to be given to the evidence. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). In reviewing the record, we give the evidence its strongest probative force in favor of the agency's ruling. *Arkansas Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001). We conclude that there is substantial evidence to support the Board's decision.

For her second point, Chandler argues that the Board violated Ark. Code Ann. § 25-15-210(a) (Repl. 2002) when it adopted the revised findings of fact without first reviewing the

transcript of the proceedings before voting in this case.[3] This issue is not preserved for our review. At the remand hearing, Chandler presented a document containing several objections to what she perceived to be violations of her rights. Nowhere mentioned in those objections is an objection to the Board members' not having reviewed the earlier proceedings prior to adopting the revised findings. Our supreme court has held that the failure to object because the members of an administrative body had not reviewed the transcript prior to voting on the matter precludes judicial review of the issue. *Ford Motor Co. v. Arkansas Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004).

■ Chandler's third and final point challenges several of the Board's revised findings as not specific enough, not supported by the record, not constituting violations of the Standards, not affecting valuation, or misleading. Chandler focuses on each sentence in the Board's findings; (however, we do not engage in a de novo review of the Board's actions, and are not permitted to do so under the Administrative Procedure Act. *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999). Chandler argues that, at most, the evidence proves that she made some mistakes in her appraisals and that it is human to make mistakes. However, the Board cannot discipline Chandler for merely making mistakes unless they demonstrate incompetence or are violations of the statutes and regulations pertaining to appraisers. *See* Ark. Code Ann. § 17-14-206(a)(4) (Supp. 2007). Instead, the focus should be on the Board's conclusion that Chandler violated the Standards or other Board rules and regulations. *See Tomerlin v. Nickolich*, 342 Ark. 325, 27 S.W.3d 746 (2000). Chandler admitted that she had violated the Standards in at least one instance by failing to properly analyze the sales contract of one property as well as her agreement that some of the comparables she used appear to be

---

[3] Section 25-15-210(a) provides as follows:

When, in a case of adjudication, a majority of the officials of the agency who are to render the decision have not heard the case or read the record, the decision, if adverse to a party other than the agency, shall not be made until a proposal for decision is served upon the parties and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The proposal for decision shall contain a statement of the reasons therefor and of each issue of fact or law necessary thereto, prepared by the person who conducted the hearing.

superior to the subject properties. Therefore, the Board's decision is supported by substantial evidence.

Affirmed.

GLOVER and HEFFLEY, JJ., agree.